IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

TIFFANY HICKS,

    Plaintiff,

v.

CNP OKLAHOMA, LLC, an Oklahoma Limited Liability Company, CHICKEN N PICKLE, LLC, a Missouri Limited Liability Company, and JOHN DOE COMPANY,

    Defendants.

Civil Case: 5:24-cv-00465-PRW

# FIRST AMENDED COMPLAINT

### A. Venue

1. The Plaintiff is a resident of Oklahoma City, Oklahoma.

2. The Defendant CNP OKLAHOMA, LLC, is Missouri Limited Liability Company.

3. CNP OKLAHOMA, LLC, is a Missouri Limited Liability Company.

4. All or most of the Defendants' relevant conduct took place in Oklahoma City, Oklahoma.

5. Oklahoma City, Oklahoma is within the jurisdiction of the Western District Court of Oklahoma.

6. Therefore, the Western District Court of Oklahoma is the proper venue for this suit.

### B. Jurisdiction

7. The Plaintiff raises federal sex/race discrimination and retaliation claims under the Civil Rights Act.

8. The Plaintiff also raises disability discrimination and retaliation claims under the Americans with Disability Act.

9. Because this case presents questions of federal law, this Court has federal-question jurisdiction under 28 U.S.C. § 1331.

10. The Defendants removed this case from state court to federal court in the Western District of Oklahoma based on diversity jurisdiction. *See* Defendants' Notice of Removal (Doc. 1) filed May 7, 2024.

11. The Plaintiff also raises related state-question claims under the Oklahoma Anti-Discrimination Act (25 OKLA.STAT. §§ 1101-1706). These claims are related to, and form part of, the same case or controversy.

12. Because this Court has subject matter jurisdiction over the Plaintiff's federal-question claims, it may assert supplemental jurisdiction over Plaintiff's state-law claims, pursuant to 28 U.S.C. § 1367. *See also* FRCP 18(a).

13. Therefore, the Western District Court of Oklahoma has subject matter jurisdiction over this dispute.

### C. FACTS GERMANE TO ALL COUNTS

14. In October 2022, Tiffany was hired as a "Kitchen Prep" worker by Defendant CNP OKLAHOMA, LLC, an Oklahoma Limited Liability Company.

15. CNP OKLAHOMA, LLC, uses an employee handbook published by CHICKEN N PICKLE, LLC.

16. CHICKEN N PICKLE, LLC, provides training, oversight, and capital to CNP OKLAHOMA, LLC.

17. Based on the facts alleged above, the two entities (CNP OKLAHOMA, LLC, and CHICKEN N PICKLE, LLC) are a joint employer/integrated enterprise for the purposes of this case.

18. Because Defendants CNP OKLAHOMA, LLC, and CHICKEN N PICKLE, LLC, (collectively "Chicken N Pickle" or "CNP") are a joint employer/integrated entity, Tiffany is an employee of both entities.

19. On or about October 8, 2022, Tiffany applied to work for CNP at its Oklahoma City location: 8400 N. Oklahoma Ave., Oklahoma City, OK 73114.

20. Tiffany applied to CNP seeking to work as a server, barback, chef, or sous chef. Tiffany's preference was something "front of the house" (a position involving direct contact with customers). During her employment interview with CNP, Tiffany emphasized that she desired to work as a bartender.

21. When Tiffany applied to CNP, she noted on her application that she was a certified food handler and that she was certified to serve beer/alcohol.

22. In October 2022, she was extended an opportunity to interview with CNP. Sean Kanaly ("Sean") conducted the interview.

23. In support of her desire to work as a bartender, Tiffany discussed with Sean her ability to sell beer/alcohol. Tiffany and Sean also discussed that Tiffany showed Sean her certificates to serve beer and alcohol.

24. Despite her desire to work a "front of the house" position (including bartender), Tiffany was told that she was "too strong" to fulfill such roles.

25. Sean's comments constitute sex discrimination as there is a historical stereotype

and trope uniquely directed at women.

26. Despite Tiffany's application indicating she was applying for barback, server, chef, or sous chef, CNP offered Tiffany a full-time "kitchen prep" position.

27. The kitchen prep position is a position that is "back of the house" (not involving direct contact with customers).

28. Tiffany neither applied for this position nor demonstrated any desire to work in this role.

29. At CNP, the kitchen prep position does not earn tips.

30. Even though Tiffany had years of experience as a kitchen/restaurant manager, banquet chef, bartender, and server, and had bona fide certifications, the best position CNP offered Tiffany was an entry-level kitchen prep position.

31. However, despite Tiffany's experience and certifications, she accepted the kitchen prep position because she needed money.

32. Upon acceptance, Tiffany told CNP that she needed to start as soon as possible.

33. Just after starting, however, Tiffany quickly encountered relentless harassment from a supervisor, Michael Etherington ("Michael").

34. Michael was an "Assistant Kitchen Manager" ("AKM") and one of Tiffany's four immediate supervisors.

35. While on shift, Michael (white twenty-five-year-old male) repeatedly and openly made inappropriate and prurient comments to Tiffany, ranging from uninvited boasts about the size of Michael's genitals, to unwanted commentary about the size of Tiffany's breasts, to offensive overtures concerning Michael's racialized attraction to, and

self-proclaimed ability to "handle," black women.

36. Michael, at the same time, regularly placed himself at workstations near Tiffany, ensuring his ability to speak with and harass Tiffany, as well as stare at and otherwise intimidate Tiffany.

37. Michael also repeatedly asked Tiffany to stay after hours as a way of propositioning her, and as his behavior went unchecked by other present management, it escalated.

38. Just some weeks after Tiffany started at CNP, Michael approached Tiffany from behind Tiffany while she briefly bent over to complete a workplace task and rubbed his genitals against her backside.

39. Tiffany asked Michael to stop.

40. Michael did eventually stop rubbing his genitals across Tiffany's backside.

41. Michael did not, however, cease to harass Tiffany.

42. Each time Michael did so, Tiffany tried to shut down the harassment.

43. Tiffany repeatedly told Michael that his actions were inappropriate, offensive, and disrespectful.

44. Despite Tiffany's comments, Michael did not stop.

45. More than once, after Tiffany told him to stop, Michael told Tiffany that no one would believe Tiffany and he did not stop his targeted conduct.

46. Tiffany eventually approached David Hall ("David"), an AKM, and asked for his advice.

47. David instructed Tiffany that CNP wanted complaints to be passed up the chain of command.

48. David suggested that Tiffany talk to John Roe ("John"), the kitchen manager.

49. Tiffany followed David's advice and spoke to John. However, speaking to John did not stop Michael's sexual harassment and sexual contact.

50. After Tiffany complained to John, Tiffany learned that a meeting took place regarding her complaints. Michael, John, and another one of Tiffany's supervisors (Eli Loya) ("Eli") attended.

51. After this meeting, Michael still continued to target Tiffany.

52. Although Michael had this meeting with CNP supervisors, Tiffany was not invited to speak to John and Eli about Michael's abuse.

53. Despite Tiffany's complaints to CNP, Tiffany was still scheduled to work with Michael.

54. The management of the Oklahoma CNP knew that Tiffany was being sexually harassed and assaulted and still scheduled her to work with Michael.

55. Even after Michael met with John and Eli, Tiffany was still the subject of harassment and assault.

56. CNP had more than fifteen employees during the relevant time period.

57. Tiffany has exhausted her administrative remedies by timely filing an EEOC charge of discrimination.

58. The EEOC issued Tiffany's right to sue letter on February 9, 2024, and Tiffany received it thereafter.

59. Tiffany timely filed her Petition (in state court) within ninety days of receiving her right to sue letter.

## COUNT 1: RACE DISCRIMINATION

60. Tiffany, as a black woman, is a member of a racial group that is protected under the law against discrimination.

61. Tiffany is (and, at all pertinent times, was) qualified for her job and qualified for the "front of house" and bartender, barback, chef, and sous chef positions she applied for.

62. Despite Tiffany's ten-plus years of relevant work history, CNP refused to offer her a "front of house," bartender, barback, chef, or sous chef position.

63. CNP's refusal to offer her a "front of house," bartender, barback, chef, or sous chef position was due to Tiffany's race/color.

64. Despite not applying for a "back of house" position, CNP engaged in racial discrimination by offering a non-tip, "back of house" position to Tiffany.

65. CNP created or allowed to exist a hostile work environment in which Tiffany was subjected to racial abuse, harassment, and discrimination.

66. Although CNP was aware or should have been aware of the racial abuse Tiffany suffered, CNP failed to take appropriate measures to prevent or address the racial abuse.

67. Racial discrimination violates Title VII of the Civil Rights Act.

68. Racial discrimination violates the Oklahoma Anti-Discrimination Act.

69. Under this Count, Tiffany is entitled to emotional distress/dignitary harm damages, and damages for wage loss including front pay and back pay.

70. For this Count, Tiffany demands compensatory damages in excess of $75,000.00.

71. Because the Defendants' conduct was willful, or at least, was in reckless

disregard of Tiffany's rights, Tiffany is entitled to an award of punitive damages in excess of $75,000.

72. Tiffany is also entitled to a declaratory judgment that Defendants violated the Oklahoma Anti-Discrimination Act and Title VII of the Civil Rights Act.

73. Tiffany is entitled to attorney fees and costs.

74. Tiffany also requests any further relief deemed just and equitable by this Court.

### COUNT 2: GENDER/SEX DISCRIMINATION

75. Tiffany, as a woman, is a member of a group that is protected under the law against discrimination.

76. Tiffany is (and, at all pertinent times, was) qualified for her job and qualified for the "front of house" and bartender, barback, chef, and sous chef positions she applied for.

77. Despite Tiffany's ten plus years of relevant work history, CNP refused to offer her a "front of house," bartender, barback, chef, or sous chef position due to Tiffany's gender/sex.

78. Despite not applying for a "back of house" position, CNP engaged in gender/sex discrimination by offering a non-tip, "back of house" position to Tiffany.

79. Tiffany was subjected to severe and pervasive sexual harassment and assault by her supervisor while employed at CNP.

80. Despite Tiffany's complaints to CNP management, the sexual harassment and assault persisted.

81. CNP management knew or should have known about Michael's conduct but failed to take appropriate action to stop the harassment and protect Tiffany from further

abuse.

82. Tiffany suffered severe emotional distress, humiliation, and other damages as a result of the sexual harassment and assault perpetrated by Michael, and by CNP's failure to address the situation.

83. CNP created or allowed to exist a hostile work environment in which Tiffany was subjected to gender/sex-based abuse, harassment, assault, and discrimination.

84. CNP was aware or should have been aware of the gender/sex-based abuse Tiffany suffered.

85. CNP failed to take appropriate measures to prevent or address the gender/sex-based abuse Tiffany suffered gender/sex-based discrimination violates the Oklahoma Anti-Discrimination Act.

86. Gender/sex-based discrimination violates Title VII of the Civil Rights Act.

87. Under this Count, Tiffany is entitled to emotional distress/dignitary harm damages, and damages for wage loss including front pay and back pay.

88. For this Count, Tiffany demands compensatory damages in excess of $75,000.00.

89. Because the Defendants' conduct was willful, or at least, in reckless disregard of Tiffany's rights, Tiffany is entitled to an award of punitive damages in excess of $75,000.

90. Tiffany is also entitled to a declaratory judgment that Defendants violated the Oklahoma Anti-Discrimination Act and Title VII of the Civil Rights Act.

91. Tiffany is entitled to attorney fees and costs.

92. Tiffany also requests any further relief deemed just and equitable by this Honorable Court.

### COUNT 3: DISABILITY DISCRIMINATION

93. In January 2023, Tiffany had a total hip replacement operation. Tiffany informed CNP that she would be having a medical operation.

94. CNP approved Tiffany's medical leave.

95. As a result of her operation, Tiffany was going to be on leave for approximately ten weeks; Tiffany's expected return-to-work date was April 10, 2023.

96. As a result of her operation, Tiffany was not able to stand for long periods of time.

97. Because of her operation, Tiffany suffered from a disability which substantially limited one or more of her major life activities.

98. CNP regarded Tiffany as having an impairment; CNP knew Tiffany had the operation and that Tiffany had an issue standing for extended periods of time after the operation.

99. Because of her disability, Tiffany requested to switch to a new job that required less standing.

100. CNP denied this request.

101. CNP had a duty to engage in an interactive process with Tiffany to reassign her work tasks which she could perform considering her medical status.

102. CNP failed to engage in the interactive process because it did not offer Tiffany options for job reassignment.

103. CNP failed to engage in the interactive process because it did not offer Tiffany options for job modification.

104. CNP was obligated to reasonably accommodate Tiffany's disability, and it failed to do so.

105. Because CNP did not in good faith engage in the interactive process, it has violated 25 OKLA. STAT. § 1302.

106. Because CNP did not reasonably accommodate Tiffany's disability, it has violated 25 OKLA. STAT. § 1302.

107. Because CNP did not reasonably accommodate Tiffany's disability, it has violated the Americans with Disabilities Act.

108. Because CNP would not accommodate Tiffany, CNP engaged in constructive discharge.

109. For this Count, Tiffany demands compensatory damages in excess of $75,000.00.

110. Because Tiffany was constructively discharged, she is owed lost income, front pay, and back pay.

111. Because the Defendants' conduct was willful, or at least, was in reckless disregard of Tiffany's rights, Tiffany is entitled to an award of punitive damages in excess of $75,000.

112. Tiffany is also entitled to a declaratory judgment that Defendants violated the Oklahoma Anti-Discrimination Act.

113. Tiffany is also entitled to a declaratory judgment that Defendants violated

the Americans with Disabilities Act.

114. Tiffany is entitled to attorney fees and costs.

115. Tiffany also requests any further relief deemed just and equitable by this Honorable Court.

116. Tiffany has suffered emotional distress, humiliation, and financial harm as a result of CNP's discriminatory actions entitling her to compensatory damages in excess of $75,000.00.

117. Tiffany also requests any further relief deemed just and equitable by this Honorable Court.

                                      GARVIN AGEE CARLTON, P.C.

                                      By _/s Jacob Yturri_____
                                          Jacob Yturri, OBA# 35269
                                          Jacob.yturri@gaclawyers.com
                                    P.O. Box 10
                                    Pauls Valley, OK 73075-0010
                                    405-238-1000
                                    Fax: 405-238-1001
                                    Attorneys for Tiffany Hicks